IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | |
|---|---|
| ALLCAPCORP, LTD. CO. d/b/a § <br> ALLEGIANCE CAPITAL § <br> CORPORATION, § <br>       Plaintiff, § <br> § <br> v. § <br> § <br> CHC CONSULTING, CONGRUEX LLC, § <br> and D.A. DAVIDSON &CO., § <br>       Defendants. § | Civil Action No. 3:17-CV-0757-S-BH <br><br><br> Referred to U.S. Magistrate Judge |

**FINDINGS, CONCLUSIONS, AND RECOMMENDATION**

By order of reference dated July 5, 2018 (doc. 73), this case has been referred for full case management. Before the Court are *Defendant CHC Consulting's Motion to Transfer Venue and Memorandum in Support Thereof*, filed May 30, 2018 (doc. 60); *Defendant D.A. Davidson's Motion to Dismiss for Lack of Personal Jurisdiction or, Alternatively, to Transfer Venue and Memorandum in Support Thereof*, filed June 11, 2018 (doc. 62); and *Defendant Congruex LLC's Motion to Dismiss for Lack of Personal Jurisdiction or, Alternatively, to Transfer Venue and Memorandum in Support Thereof*, filed June 14, 2018 (doc. 67). Based on the relevant filings, evidence, and applicable law, the motions to transfer venue should be **GRANTED,** and the motions to dismiss should be **DENIED as moot**.

**I.  BACKGROUND**

Allcapcorp, Ltd. Co. d/b/a Allegiance Capital Corporation (Plaintiff) is an investment bank with its principal place of business in Dallas, Texas. (doc. 57 at 2.)[1] In the summer of 2014, it entered into discussions with CHC Consulting, LLC (CHC) regarding CHC's interest in selling all

---

[1] Citations to the record refer to the CM/ECF system page number at the top of each page rather than the page numbers at the bottom of each filing.

or a part of its equity interests or assets to a third party, and the possibility of engaging Plaintiff's investment banking services in connection with such a transaction. (*Id.* at 5.) CHC is a California-based engineering consulting firm, and its original owners and managers are all California residents. (doc. 60-1 at 5.)

On August 28, 2014, CHC's original owners, Paul Cook, Sue Cook, and Chris Cook, traveled to Plaintiff's office in Dallas, Texas, to meet with Plaintiff's principals and several of its bankers to continue discussing a potential agreement. (doc. 57 at 5.) Before CHC's owners returned to California, Plaintiff provided them a copy of an engagement agreement. (*Id.*) Plaintiff and CHC continued with their discussions regarding the engagement agreement from their respective offices in California and Texas. (*Id.*)

On September 19, 2014, CHC's owners signed the engagement agreement (Agreement) and forwarded it from its office in Santa Ana, California, to Plaintiff. (doc. 57 at 6.) The Agreement is less than two pages in length and does not contain a venue or choice-of-law provision. (doc. 60-1 at 12-13.) It provides that either party may terminate the agreement at any time with ten days' written notice. (*Id.* at 13.) It also provides that if "any transaction involving a complete or partial sale, merger, consolidation, or recapitalization involving [CHC's] stock or assets" occurs within two years of the Agreement's termination (referred to by Plaintiff as the "Tail Period" (Tail Period)), CHC is obligated to pay Plaintiff its "success fee" (Success Fee) under the Agreement. (*Id.* at 12-13.)

Soon after the Agreement was executed, Plaintiff conducted an on-site visit to CHC's office in California to gather information on the business. (doc. 57 at 9.) Plaintiff's "personnel in Texas collectively devoted over 300 hours in connection with [Plaintiff's] obligations under the

2

Engagement Agreement, including, among other things, the preparation of a 105-page Confidential Information Memorandum ('CIM'), research and marketing to prospective acquirers, sourcing a part-time CFO consultant to get CHC's books in order for sale, preparing the ownership for management meetings, and review and assessment of written Indications of Interest ('IOI's')." (*Id.* at 8-9.) Prior to the termination of the Agreement, Plaintiff approached 278 potential acquirers, reviewed and assessed nine IOIs, and conducted four management meetings. (*Id.* at 9.)

On October 15, 2015, CHC provided written notice of the termination of the Agreement, effective on October 25, 2015. (doc. 57 at 10.) In or around June 2016, CHC decided to reconsider its potential sale and interviewed several potential investment bankers to assist in such a transaction. (60-1 at 7.) CHC ultimately engaged D.A. Davidson & Co. (Davidson), a Montana corporation, to advise it in connection with a potential sale. (*Id.*)

In early 2017, the Davidson's team in Orange County, California, identified Congruex, LLC (Congruex) as a prospective buyer for CHC's business. (docs. 60-1 at 7; 62-1 at 21.) Congruex is a Delaware limited liability company with its principal place of business in Boulder, Colorado. (doc. 67-1 at 24.)

On February 6, 2017, Chris Cook informed Plaintiff that CHC was "in the early stages of pursuing the possible sale of CHC," and that CHC had engaged an investment bank to assist it with the sale. (doc. 57 at 10.) On March 6, 2017, Plaintiff sued CHC in the 191st Judicial District Court, Dallas County, Texas, seeking a declaratory judgment regarding the validity and enforceability of the Agreement and CHC's obligation to pay its Success Fee. (doc. 1-3 at 8-18.) CHC removed the case to federal court on March 15, 2017, based on diversity jurisdiction. (doc. 1.)

On December 29, 2017, Congruex purchased the membership interests of CHC

(Transaction). (docs. 60-1 at 8; 62-1 at 21; 67-1 at 24.)  The Transaction was brokered by Davidson's California team. (doc. 62-1 at 21.) On May 21, 2018, Plaintiff filed its Second Amended Complaint still seeking declaratory judgment regarding the parties' respective rights and obligations under the Agreement, and added claims based on theories of breach of contract, quantum meruit, promissory estoppel, and unjust enrichment. (*See* doc. 57.)  Plaintiff also added Davidson and Congruex as defendants for tortious interference with a contract. (*Id.* at 19-20.)

CHC moves to transfer this case to the Central District of California (CDCA) under 28 U.S.C. § 1404(a), arguing that it is a more convenient forum. (doc. 60.)  Davidson and Congruex move to dismiss under Rule 12(b)(2) for lack of personal jurisdiction, and alternatively, to transfer the case to the CDCA.  (docs. 62; 67.)  With timely-filed responses and replies, the motions are ripe for consideration.

## II. TRANSFER OF VENUE

CHC argues that all of the applicable factors weigh in favor of transfer to the CDCA because the business at the heart of the dispute is a California entity with no ties to Texas. (doc. 60 at 6.) Davidson and Congruex also argue that transfer is appropriate because all events giving rise to the tortious interference claim asserted against them occurred in the CDCA, and both agree that they are subject to the jurisdiction of the CDCA. (docs. 62 at 13-14; 67 at 14-15.)

A district court may transfer any civil case "[f]or the convenience of parties and witnesses, in the interest of justice . . . to any other district or division where it may have been brought or to any district or division to which all parties have consented." 28 U.S.C. § 1404(a); *see also Atl. Marine Constr. Co. v. United States Dist. Court*, 571 U.S. 49, 62 (2013) (in the typical case that does not involve a forum-selection clause, a district court considering a §1404(a) motion must evaluate

both the convenience of the parties and various public-interest considerations). This provision gives a district court broad discretion to transfer a case to another district where venue is also proper. *Balawajder v. Scott*, 160 F.3d 1066, 1067 (5th Cir. 1998). "The moving parties bear the burden of proving by a preponderance of the evidence that transfer is appropriate." *Bank One*, *N.A. v. Euro-Alamo Invs., Inc.*, 211 F. Supp.2d 808, 812 (N.D. Tex. 2002). "When the Court considers a motion to transfer venue, it may examine affidavits submitted by either party." *Stults v. Maalt Specialized Bulk LLC*, No. 3:17-CV-1683-B, 2018 WL 1697583, at *1 (N.D. Tex. Apr. 6, 2018) (citing *Plum Tree, Inc. v. Stockment*, 488 F.2d 754, 756-57 (3d Cir. 1973) and *LeBlanc v. C.R. England, Inc.*, 961 F. Supp. 2d 819, 823 n.1 (N.D. Tex. 2013)).

As a threshold matter, § 1404(a) requires a determination of whether the proposed transferee district is one in which the suit might have been brought. *In re Horseshoe Entm't*, 337 F.3d 429, 433 (5th Cir. 2003) (per curiam). Once this threshold has been met, the court must then consider a number of private and public interest factors to determine whether or not, on balance, the litigation would more conveniently proceed and the interests of justice be better served by transfer to a different forum. *In re Volkswagen of America, Inc.*, 545 F.3d 304, 315 (5th Cir. 2008) [hereinafter *In re Volkswagen II*]. A court may not transfer a case where the result is merely to shift inconvenience of the venue from one party to the other. *TGI Friday's Inc. v. Great Nw. Restaurants, Inc.,* 652 F. Supp. 2d 750, 761 (N.D. Tex. 2009) (citing *Fowler v. Broussard*, No. 3:00-CV-1878-D, 2001 WL 184237, at *6 (N.D. Tex. Jan. 22, 2001)).

A. **Proposed Transferee District**

For all civil actions brought in a United States district court, venue is proper in:

(1) a judicial district in which any defendant resides, if all defendants are residents of the State in which the district is located; (2) a judicial district in which a

5

>substantial part of the events or omissions giving rise to the claim occurred, or a substantial part of property that is the subject of the action is situated; or (3) if there is no district in which an action may otherwise be brought as provided in this section, any judicial district in which any defendant is subject to the court's personal jurisdiction with respect to such action.

28 U.S.C. § 1391(b). Generally, in order for venue to be proper, it must be proper as to all defendants and all claims. *City of Waco v. Schouten*, 385 F. Supp. 2d 595, 599 (W.D. Tex. 2005); *McCaskey v. Cont'l Airlines, Inc.*, 133 F. Supp. 2d 514, 523 (S.D. Tex. 2001) (noting that in actions involving multiple defendants and multiple claims, venue must be proper as to each defendant and as to each claim); *Collins v. Doe*, No. CIV.A. H-10-2882, 2012 WL 1414246, at *3 (S.D. Tex. Apr. 23, 2012) (same). Accordingly, a court must analyze venue as to each defendant and each claim. *Id.*

### 1. CHC

CHC is a limited liability company with its principal place of business in Santa Ana, Orange County, California, which is located in the Southern Division of the CDCA. (doc. 60-1 at 5); *see* 28 U.S.C. § 84. Because CHC is a resident of the CDCA,[2] this action against it could have been brought in that division. *See* 28 U.S.C. § 1391(b)(1). Plaintiff does not dispute that it could have brought this action against CHC in the CDCA. (doc. 85 at 10.)

Plaintiff also directed communications to CHC in California and visited its Santa Ana office before and after execution of the Agreement. (doc. 57 at 5-9.) This amounts to "a substantial part of the events" underlying all the claims asserted against CHC, and establishes proper venue in the CDCA under § 1391(b)(2) as well. *See* 28 U.S.C. § 1391(b)(2).

---

[2] *See* 28 U.S.C. § 1391(c)(2) ("an entity with the capacity to sue and be sued in its common name under applicable law, whether or not incorporated, shall be deemed to reside, if a defendant, in any judicial district in which such defendant is subject to the court's personal jurisdiction with respect to the civil action in question").

### 2. *Davidson and Congruex*

Davidson and Congruex argue that this action could have been filed in the CDCA because CHC resides in that district, and a substantial part of the events or omissions giving rise to the claims against them occurred there. (docs. 62 at 13-14; 67 at 10-11.) Plaintiff responds that Davidson and Congruex failed to show that either defendant "has purposefully availed itself of the protection of California's laws or that it is essentially at home in California." (doc. 85 at 10-11.)

It is well-determined that a transferee court must have jurisdiction over each defendant in the transferred complaint. *Hoffman v. Blaski,* 363 U.S. 335, 343-44 (1960). The movants have the *prima facie* burden to prove that both personal jurisdiction and venue are appropriate for all defendants in the transferee court. *Balthasar Online, Inc. v. Network Solutions, LLC,* 654 F.Supp.2d 546, 549, 551 (E.D. Tex. 2009) (quoting *Liaw Su Teng v. Skaarup Shipping Corp.*, 743 F.2d 1140, 1148 (5th Cir. 1984), *overruled on other grounds by In re Air Crash Disaster Near New Orleans, Louisiana*, 821 F.2d 1147 (5th Cir. 1987) ("Transfer of a suit involving multiple defendants is ordinarily proper 'only if all of them would have been amenable to process in, and if venue as to all of them would have been proper in, the transferee court.'")).

As noted, venue is proper in "a judicial district in which a substantial part of the events or omissions giving rise to the claim occurred." 28 U.S.C. § 1391(b)(2).[3] The "substantiality" requirement under § 1391(b)(2) "is more a qualitative than a quantitative inquiry, determined by assessing the overall nature of the plaintiff's claims and the nature of the specific events or omissions in the forum, and not by simply adding up the number of contacts." *Zurich Am. Ins. Co. v. Tejas Concrete & Materials Inc.*, 982 F. Supp. 2d 714, 722 (W.D. Tex. 2013) (citing *Daniel v.*

---

[3] Although both defendants cite § 1391(a)(2) in support of their motions to transfer, their arguments track the language of § 1391(b)(2) and are considered under that statute. (*See* docs. 62 at 14; 67 at 10.)

*Am. Bd. of Emergency Med.*, 428 F.3d 408, 432-33 (2d Cir. 2005)). Venue in a particular suit "may be properly laid in more than one district," and the "substantial part of the events or omissions test does not require that the chosen venue be the best venue . . . the selected district must simply have a substantial connection to the claim." *Id.* at 722-23 (citations omitted). Section 1391(b)(2) "requires only that the contacts with the district be substantial, not that 'the most relevant events took place' there." *JetPay Merch. Servs., LLC v. Chartis Specialty Ins. Co.*, No. 3:13-CV-0401-M, 2013 WL 3387517, at *2 (N.D. Tex. July 8, 2013) (quoting *Emelike v. L–3 Commc'ns Corp.*, No. 3:12-CV-2470, 2013 WL 1890289, at *3 (N.D. Tex. May 7, 2013)); *McClintock v. Sch. Bd. E. Feliciana Par.*, 299 F. App'x 363, 365 (5th Cir. 2008) ("Although the chosen venue does not have to be the place where the most relevant events took place, the selected district's contacts still must be substantial.").

Here, Plaintiff is asserting a tortious interference claim against Davidson and Congruex for willfully and intentionally interfering with the Agreement. As noted, the Agreement underlying the tortious interference claim involves a business located in the CDCA and was partially negotiated and executed in that division. (doc. 57 at 5-6.) Davidson's California team identified Congruex, and Defendants provide evidence that all diligence and negotiations related to the Transaction occurred in California. (docs. 60-1 at 8; 62-1 at 8, 21; 67-1 at 24.) These actions go toward the elements of the existence of a valid contract and the willful and intentional act of interference. They are a substantial part of the events giving rise to the cause of action for tortious interference with an existing contract.[4]

---

[4] Davidson and Congruex have also consented to personal jurisdiction in the CDCA. (docs. 62 at 14; 67 at 11.) *See Intravisual, Inc. v. Fujitsu Ltd.*, No. 2:10-CV-90-TJW, 2011 WL 4378080, at *2 (E.D. Tex. Sept. 20, 2011) (analyzing *Software Rights Archive, LLC v. Google, Inc.*, No. 2:07-CV-511-CE, 2010 WL 2950351, at *2 (E.D. Tex. July 22, 2010) (explaining that "there was essentially no need for the court to inquire in depth with respect to whether

Plaintiff argues that Davidson and Congruex failed to show by a preponderance of evidence that they are subject to the jurisdiction of California. (doc. 85 at 11.) A party moving to transfer venue need only present *prima facie* evidence of jurisdiction in the transferee forum jurisdiction, however. *See Balthasar Online*, 654 F. Supp.2d at 549, 551 (E.D. Tex. 2009) (finding that movants "need only present a *prima facie* case for personal jurisdiction and venue in the [transferee forum] for the Court to proceed to the convenience analysis"). These defendants have met that burden.

Davidson and Congruex have sufficiently shown that a "substantial part of the events or omissions giving rise to the claim" occurred there, and venue is proper in the Southern Division of the CDCA.[5]

## B.   Convenience to Parties and Witnesses

Because the proposed transferee district is one in which the suit may have been brought, the next consideration is "the convenience of the parties and witnesses." *In re Volkswagen AG*, 371 F.3d 201, 203 (5th Cir. 2004) [hereinafter *In re Volkswagen I*]; *Volkswagen II,* 545 F.3d at 315. The Fifth Circuit has adopted the *forum non conveniens* private and public interest factors to determine the convenience of the parties and witnesses. *Volkswagen II*, 545 F.3d at 314-15, n.9 (5th Cir. 2008); *see also Volkswagen I*, 371 F.3d at 203.

### 1.   Private Interest Factors

The private interest factors consist of "(1) the relative ease of access to sources of proof; (2)

---

[the defendant] would be subject to jurisdiction in the transferee forum" given that the defendant already consented to personal jurisdiction of that forum).

[5] Davidson and Congruex also cite § 1391(b)(3) and maintain that venue is proper in the CDCA because CHC resides in and is subject to personal jurisdiction in the division. (docs. 62 at 14; 67 at 10.) Section 1391(b)(3), however, is only applicable upon showing that "there is no district in which an action may otherwise be brought as provided in this section," and neither party presents any argument addressing this requirement. To the extent Davidson and Congruex argue that transfer is warranted under § 1391(b)(3), their motions should be denied on that basis.

9

the availability of compulsory process to secure the attendance of witnesses; (3) the cost of attendance for willing witnesses; and (4) all other practical problems that make trial of a case easy, expeditious and inexpensive." *Volkswagen I*, 371 F.3d at 203 (citing *Piper Aircraft Co. v. Hartzell Propeller, Inc.,* 454 U.S. 235, 241 n.6 (1981)).

### a. Relative Ease of Access to Sources of Proof

The first private interest factor weighs in favor of transfer when evidence can be more readily accessed from the transferee district. *Internet Machines LLC v. Alienware Corp.*, No. 6:10–CV–023, 2011 WL 2292961, at *5 (E.D. Tex. June 7, 2011). Here, CHC does not address this factor in its motion. (doc. 60.)

Davidson generally alleges that "all transactional documents and communications related to the sale of the business are located in California." (docs. 62 at 11.) Congruex likewise contends that, "[w]ith minor exceptions," the documents and communications related to the sale of CHC are located in California. (doc. 67 at 16). Both parties fail to describe or explain any "specific [evidence] that will be more accessible" or will be used if the case is transferred to the CDCA, however. *Bedrock Logistics, LLC v. Braintree Labs., Inc*., No. 3:16-CV-2815-M, 2017 WL 1547013, at *2 (N.D. Tex. Apr. 28, 2017). Further, a representative for Congruex specifies that the documents and communications related to the Transaction "are located either in the Congruex office in Colorado, at the CHC office in Santa Ana, California, or at the offices of our respective counsel." (doc. 67-1 at 24.) As noted by Plaintiff, "the proof in this case is located in Texas, Colorado, and California." (doc. 85 at 15). Accordingly, Defendants have failed to establish that this factor weighs in favor of transfer, and it is neutral at best. *See American General Life Ins. Co. v. Rasche*, 273 F.R.D. 391, 398 (S.D. Tex. 2011); *Bedrock Logistics,* 2017 WL 1547013, at *2 (finding this factor

10

to be neutral because "neither party describes specific documents that will be more accessible if the case is tried in Texas instead of Massachusetts"); *Healthpoint, Ltd. v. Derma Sciences, Inc.*, 939 F. Supp.2d 680, 688 (W.D. Tex. 2013) ("Where . . . important documents are located in both venues, this factor does not weigh in favor of transfer.").

### b. Availability of Compulsory Process

The second private interest factor, the availability of compulsory process to secure the attendance of witnesses, favors transfer when a transferee district has absolute subpoena power over a greater number of non-party witnesses. *Internet Machines*, 2011 WL 2292961, at *6 (citing *In re Hoffman-La Roche Inc.*, 587 F.3d 1333, 1336-37 (Fed. Cir. 2009)). A district "may command a person to attend trial" by subpoena when it is "within 100 miles of where the person resides, [or] is employed . . . ." Fed. R. Civ. P. 45(c)(1)(a). "'[T]he moving party must do more than make a general allegation that certain key witnesses are needed,' and must 'specifically identify the key witnesses and outline the substance of their testimony.'" *Pension Advisory Group, Ltd. v. Country Life Ins. Co.*, 771 F. Supp. 2d 680, 710 (S.D. Tex. 2011) (quoting *Hupp v. Siroflex of America, Inc.*, 848 F. Supp. 744, 749 (S.D. Tex. 1994)).

All the defendants list the same key witnesses in their motions. Paul Cook is the former co-owner and Vice President of CHC and is named as a key witness based on his attendance of the initial and all subsequent meetings with Plaintiff. (doc. 60-1 at 9.) Jerry Collazo is the former CFO for CHC and was "[i]initially retained to get CHC's books ready for a sale." (*Id.*) He also "[h]andled the financial aspects of the subject transactions; provided all financial and forecasting information; and [a]ttended most, if not all, meetings with Congruex." (*Id.*) Defendants state that Mr. Collazo can provide testimony "regarding the timing and status of the negotiations." (*Id.*)

11

William J. Simpson was outside counsel for CHC and was "responsible for negotiating the sale of the CHC business to Congruex." (*Id.*) Defendants state that he will also be able to "testify regarding the timing and status of the negotiations." (*Id.* at 13.)

Defendants contend that these three witnesses are no longer under the control of CHC and are "outside the subpoena power of this Court for trial." (doc. 87 at 5.) All three witnesses reside in Orange County, or in the immediately adjacent county of Riverside (doc. 60-1 at 12-13), which is within the CDCA's range of compulsory process. *See* Fed. R. Civ. P. 45(c)(1)(a) (a district's compulsory process by subpoena extends to "within 100 miles of where the person resides, [or] is employed"). Plaintiff has not identified any key witnesses that this Court would need to compel to testify or attend trial. (*See* doc. 85.) The second private factor weighs in favor of transfer.

### c. Cost of Attendance of Willing Witnesses

The third private interest factor is the cost of attendance for willing witnesses. *Volkswagen I*, 371 F.3d at 203. "The Court must consider the convenience of both the party and non-party witnesses." *Vargas v. Seamar Divers Int'l, LLC,* No. 2:10-CV-178-TJW, 2011 WL 1980001, at *7 (E.D. Tex. May 20, 2011) (citing *Volkswagen I*, 371 F.3d at 204).

Here, Defendants argue that "the convenience of the witnesses supports transfer" because "there are numerous witnesses for whom California will be a more convenient forum." (docs. 60 at 8; 62 at 15; 67 at 10). Nine of Defendants' ten key witnesses reside in California. (doc. 60-1 at 9-10.) The tenth key witnesses, the Managing Member and CEO of Congruex, resides in Boulder, Colorado. (doc. 67-1 at 24.) Plaintiff argues that the transfer is merely an impermissible attempt at shifting costs to it. (doc. 85 at 13.) Plaintiff contends that Defendants have "failed to support their argument of inconvenience of the witnesses with any evidence demonstrating the cost of" traveling

12

to the Northern District of Texas. (*Id.* at 13-14). Nevertheless, Plaintiff fails to identify a single Texas resident it considers a key witness in this case. Although Plaintiff is a Texas-based company, it does not state whether it plans to call any witnesses to trial that reside in Texas. Plaintiff has failed to provide any meaningful information to weigh this convenience factor. *See LeBlanc v. C.R. Eng., Inc.*, 961 F. Supp. 2d 819, 832 (N.D. Tex. 2013) (internal citation omitted) ("While it is England's burden as the movant to demonstrate that the destination venue is clearly more convenient, LeBlanc's bald assertions about prohibitive cost do little to rebut England's argument and evidence.").

Further, Defendants have identified three non-party witnesses who are California residents that would be inconvenienced if this action remains in Texas. (doc. 60-1 at 9-10.) "While the convenience of the witnesses 'is often regarded as the most important factor to be considered in deciding whether to transfer venue,' it is the convenience of non-party witnesses which is accorded the most weight." *Freehold Licensing, Inc. v. Aequitatem Capital Partners, LLC*, No. A-18-CV-413 LY, 2018 WL 5539929, at *7 (W.D. Tex. Oct. 29, 2018) (quoting *Woolf v. Mary Kay Inc.*, 176 F. Supp.2d 642, 650 (N.D. Tex. 2001)); *Ternium Intern. U.S.A. Corp. v. Consol. Sys.*, 2009 WL 464953, at *4 (N.D. Tex. Feb. 24, 2009). Plaintiff has yet to identify any potential non-party witnesses that would be burdened if this action was transferred to the CDCA. (*See* doc. 85.) Even if Plaintiff intends to call its employees as witnesses, their convenience would be entitled to less weight relative to Defendants' non-party witnesses. *See Gardipee v. Petroleum Helicopters, Inc.*, 49 F. Supp. 2d 925, 929 (E.D. Tex. 1999) ("Where, as here, the key witnesses of the party seeking transfer are employees of that party, their convenience is entitled to less weight because that party will be able to compel their testimony at trial."); *In re Triton Ltd. Sec. Litig.*, 70 F. Supp.2d 678, 690

(E.D. Tex. 1999) ("It is the convenience of non-party witnesses, rather than of employee witnesses, however, that is the more important factor and accorded greater weight."). In contrast, three of the ten witnesses identified by Defendants are non-party witnesses that reside in California. (doc. 60-1 at 9-10.) Accordingly, this factor weighs greatly in favor of transfer.

### d.   Other Practical Problems

The fourth private interest factor is a catch-all consideration that includes all other problems that obstruct easy, expeditious, and inexpensive trials. *See Volkswagen I*, 371 F.3d at 203. None of the parties addressed this factor. Accordingly, this factor is neutral.

### 2.   *Public Interest Factors*

In addition to the private interest factors, courts must also consider the *forum non conveniens* public interest factors to see if they favor transfer. *Volkswagen I*, 371 F.3d at 203. They include "(1) the administrative difficulties flowing from court congestion; (2) the local interest in having localized interests decided at home; (3) the familiarity of the forum with the law that will govern the case; and (4) the avoidance of unnecessary problems of conflict laws [or in] the application of foreign law." *Id.*

### a.   Court Congestion

The first public interest factor concerns the administrative difficulties flowing from court congestion. *See Volkswagen I*, 371 F.3d at 203. "Generally, this factor favors a district that can bring a case to trial faster." *Frito-Lay N. Am. v. Medallion Foods, Inc.*, 867 F. Supp. 2d 859, 871 (E.D. Tex. 2012).

CHC acknowledges that "[a]s far as convenience to the respective courts is concerned, CHC has no reason to believe that the CDCA is any more or less congested than this Court." (doc. 60 at

14

20.) The other parties do not address this factor in their briefs. This factor is neutral.

**b.     Local Interest**

The second public interest factor is the local interest in having localized interests decided at home. *Volkswagen I*, 371 F.3d at 203. This factor favors transfer if "the events giving rise to this action occurred in [the transferee district/division] . . . ." *Volkswagen II*, 545 F.3d at 315. "A local interest is demonstrated by a relevant factual connection between the events and the venue." *LeBlanc*, 961 F. Supp. 2d at 832-33 (citations and quotation omitted).

*(i)     CHC*

Here, CHC argues that this factor weighs in favor of transfer because the business at issue in this dispute is a California business entity. (doc. 60 at 14.) Because Plaintiff is suing to enforce an agreement that is subject to California's licensing requirements, CHC argues that California has a strong localized interest "of ensuring that businesses engaging in M&A activity in California and providing financial and investment banking advisory services to California companies are appropriately licensed." (doc. 60 at 16.) Plaintiff argues that Texas has a local interest because it performed its contractual obligations under the Agreement in Texas. (doc. 85 at 17.) Plaintiff further argues that Texas has a localized interest in enforcing an agreement entered by a Texas business entity. (*Id.*)

This case involves a Texas party bringing suit against non-Texas Defendants and involves business interactions between the parties, occurring primarily in the states of Texas and California. Texas, like California, has an interest in having localized interests decided at home. *See Pension Advisory Group*, 771 F. Supp.2d at 711 (finding that in a case with Texas residents against non-Texas residents involving business interactions between the parties, both the Texas forum and the

15

non-Texas forum had a significant interest in the matter). Nevertheless, CHC has shown that the claims asserted against it are potentially impacted by California's public policy interest in requiring brokers involved in similar California sales transactions to be licensed. *Bedrock Logistics,* 2017 WL 1547013, at *4 ("While the residents of the Northern District of Texas may have an interest in unpaid invoices of companies doing business in the district, Massachusetts residents have a greater interest in the resolution of a potential illegal kickback scheme that occurred in Massachusetts under the state's unfair competition statute."). The second public interest factor as applied to CHC slightly edges towards transfer.

### (ii) *Davidson and Congruex*

Davidson and Congruex argue that this factor weighs in favor of transfer because the tortious interference claim alleged against them arises out of a California sales transaction involving a California business entity. (docs. 62 at 15; 67 at 17.) The Transaction closed in California and was handled by the Davidson's California office. (doc. 62-1 at 21.) They note that even assuming that they willfully and intentionally agreed to wait until the Tail Period lapsed before the Transaction closed, as alleged by Plaintiff, such conduct would have occurred in either California or Colorado, not Texas. (docs. 62 at 15; 67 at 17.) Like CHC, Davidson and Congruex also argue that California has a greater localized interest in the claims asserted against them based on California's public policy concerns regarding the licensing of brokers. (*Id.*) They lastly maintain that the State of Texas has no localized connection or interest in the Transaction. (*Id.*) Plaintiff counters that because its declaratory action on the Agreement was originally filed in Texas state court before the Transaction closed, it was an event in Texas that gave Davidson and Congruex actual notice of the Agreement. (doc. 85 at 17.) By continuing with the Transaction, Plaintiff argues that they knew that they would

16

be willfully interfering with a contract that had some association with Texas. (*Id.*)

While Texas has an interest in enforcing agreements entered by its residents, California has an equal interest in the sales of a California business that was brokered in the state and is the subject of a non-resident's tortious interference claim. *See Pension Advisory Group*, 771 F. Supp.2d at 711. Further, Davidson and Congruex have shown that California has an additional public policy interest based on its broker licensing laws. *See Bedrock Logistics,* 2017 WL 1547013, at *4. Given the lack of substantive connection between Texas and the conduct of Davidson and Congruex that gives rise to Plaintiff's tortious interference claim, the second public interest factor weighs in favor of transfer.

### c.     Familiarity with the Governing Law

The third public interest factor is "the familiarity of the forum with the law that will govern the case." *Volkswagen I*, 371 F.3d at 203.

Here, the Agreement lacks a choice of law provision. (doc. 60-1 at 12-13.)  Both sides disagree as to whether Texas or California applies in this case.  Regardless of which State's laws apply in this action, the Supreme Court has held that "federal judges routinely apply the law of a State other than the state in which they sit." *Atl. Marine*, 571 U.S. at 67.  Because it is uncertain whether Texas or California law applies, the impact of the third factor is inconclusive.

### d.     Avoidance of Conflict of Laws

The fourth public interest factor is "the avoidance of unnecessary problems of conflict of laws [or in] the application of foreign law." *Volkswagen I*, 371 F.3d at 203.  Because this action does not present a conflict of law or require the application of foreign law, this public interest factor is neutral.

C. **Interest of Justice**

Analysis of the "convenience of parties and witnesses" does not end the transfer of venue inquiry; the court should also consider the "interest of justice" under § 1404(a). *See Regents of Univ. of Cal. v. Eli Lilly & Co.*, 119 F.3d 1559, 1565 (Fed. Cir. 1997).

CHC contends that conservation of judicial resources strongly compels transfer because this Court lacks personal jurisdiction over Davidson and Congruex. (doc. 60 at 14.) CHC argues that by transferring this case to the CDCA, it would "avoid wasting the judicial resources necessary to resolve the jurisdictional motions [of Davidson and Congruex]." (*Id.*) The "interest of justice" factor has been used by courts as a basis to obviate the need to adjudicate avoidable jurisdictional issues. *See Kahhan v. Fort Lauderdale*, 566 F. Supp. 736, 740 (E.D. Pa. 1983) (quoting *Donnelly v. Klosters Rederi A/S*, 515 F. Supp. 5, 7 (E.D. Pa. 1981) ("A transfer, obviating a jurisdictional difficulty, has been found to serve the interests of justice within the meaning of that language in § 1404(a).").[6]

Here, Davidson and Congruex both consent to the personal jurisdiction of California. (docs. 62 at 14; 67 at 11.) They have also presented *prima facie* proof that venue for the claims asserted against them is appropriate in the CDCA. (*Id.*) Because transferring the entire action would vitiate the need to consider jurisdictional issues in this district, the interest of justice favors transfer.

---

[6] Although the Fifth Circuit has not addressed the avoidance of a jurisdictional issue as an "interest of justice" factor, courts in other circuits have found its consideration appropriate. *See also Schwilm v. Holbrook*, 661 F.2d 12, 15 (3d Cir. 1981) ("When personal jurisdiction is questionable in one state, and a more appropriate forum exists elsewhere, transfer is proper."); *Mentor Graphics Corp. v. Quickturn Design Sys., Inc.*, 77 F. Supp. 2d 505, 512 (D. Del. 1999) (noting that courts have routinely held that both judicial economy and the interest of justice favor transfer where transferring a case would obviate a substantial question regarding personal jurisdiction); *Datasouth Comput. Corp. v. Three Dimensional Techs., Inc.*, 719 F. Supp. 446, 452 (W.D. N.C. 1989) (transfer obviating jurisdictional difficulty serves interests of justice with meaning of § 1404(a)); *Societe Novelle Generale de Promotion v. Kool Stop Int'l, Inc.*, 633 F. Supp. 153, 155 (E.D. Pa. 1985) ("If the lack of in personam jurisdiction is in doubt, sound judicial administration requires transfer to a district where it clearly could have been brought.").

### D. Plaintiff's Choice of Forum

While a plaintiff's original choice of forum "should be respected" unless "the transferee venue is clearly more convenient," it "is not an independent factor within . . . the § 1404(a) analysis." *Volkswagen II*, 545 F.3d at 314 n.10, 315. "The general rule that the plaintiff's choice of forum is not to be disturbed does not obtain where it is clearly outweighed by other factors." *Shoemake v. Union Pac. R.R. Co.*, 233 F. Supp. 2d 828, 830 (E.D. Tex. 2002).

On balance, fewer of the operative facts appear to have occurred within this district. This is particularly the case with respect to Plaintiff's suit against Davidson and Congruex. Consequently, little weight should be apportioned to Plaintiff's choice of forum here.

### E. Balancing the Factors

Based on the facts and context of this case, the relative weight of the § 1404(a) factors substantially establish a greater nexus with the Central District of California than the Northern District of Texas. Having considered all relevant factors, the Court finds that the dispute between the parties would proceed more conveniently and the interests of justice would be better served by transferring the case to the Central District of California. In sum, Defendants have met their burden in demonstrating that a transfer of venue is warranted.

### III. RECOMMENDATION

The three motions to transfer venue should be **GRANTED**, and the motions to dismiss should be **DENIED as moot**.

**SO RECOMMENDED** on this 10th day of January, 2019.

_____
IRMA CARRILLO RAMIREZ
UNITED STATES MAGISTRATE JUDGE

## INSTRUCTIONS FOR SERVICE AND
## NOTICE OF RIGHT TO APPEAL/OBJECT

      The United States District Clerk shall serve a copy of these findings, conclusions and recommendation on all parties by mailing a copy to each of them.  Pursuant to 28 U.S.C. § 636(b)(1), any party who desires to object to these findings, conclusions and recommendation must file and serve written objections within fourteen days after being served with a copy.  A party filing objections must specifically identify those findings, conclusions or recommendation to which objections are being made.  The District Court need not consider frivolous, conclusory or general objections.  Failure to file written objections to the proposed findings, conclusions and recommendation within fourteen days after being served with a copy shall bar the aggrieved party from appealing the factual findings and legal conclusions of the Magistrate Judge that are accepted by the District Court, except upon grounds of plain error.  *Douglass v. United Servs. Auto. Ass'n*, 79 F.3d 1415, 1428-29 (5th Cir. 1996) (en banc).

_____
IRMA CARRILLO RAMIREZ
UNITED STATES MAGISTRATE JUDGE